*The Chief Justice
delivered the opinion of the court.
William Stiles having applied to the Court of Common Pleas of the county of Burlington, for relief as an insolvent--debtor, was, on the twenty-fourth day of December, 1827; remanded to prison at the instance of Asahel 0. Page, one of his creditors, and upon his agreement to pay according to the -provision contained in the act for the relief of persons imprisoned for debt, to and for the support of the said 'William Stiles, weekly and every week, the sum of fifty cents, the first payment to be made on the 25th day of the same month of December.
On the first day of August, 1828, an order was made by three judges of the said court for the discharge of Stiles from imprisonment, the creditor, Page, having failed to pay the weekly allowance on the 29 th day of July preceding.
Page has brought here by certiorari this order of discharge, and seeks to set aside the same for several reasons.
*341 1st. Because he says there was no failure to pay the weekly sum, the same having been tendered in season. The first payment, according to the agreement, was to have been made, and was made, on Tuesday, the twenty-fifth of December. The 29th day of July was Tuesday, the correspondent day of the week; and if the payment ought to have been made on that day, there was, it was conceded, a failure, the offer to pay not having been made until the next day, Wednesday, the 30th. But it is insisted, on the part of the creditor, that he had the whole of the week to make the payment; that having paid on Tuesday the 22d of July, he was not bound to pay again on Tuesday, the 29th, but might do so at any time afterwards on or before Monday, the 3d of August.
Neither the terms of the agreement nor the stipulation entered into by the creditor, nor the policy of the legislature in making this humane provision on behalf of the debtor, can in any wise admit such latitude. The plain language of the statute has left no room for doubt or misconstruction. “To be paid on the second day of each week,” evidently requiring the payment on fixed days, and which can, in no instance, be more than one wmek asunder.
2d. Another reason is that the application by the insolvent *debtor to the judges for discharge was not made in writing.
The term “ on application ” used in the act, does not necessarily imply an application in writing. Nor is it so technically understood in the language of our statutes. Thus, Lev. Laws 40, see. 11, “ When any poor person shall apply for relief to any overseer where he may reside, the said overseer shall make application to a justice of the peace.” To affix such a meaning to the term would require both these applications, as well from the overseer as from the pauper, to be in writing. The practice under this section of the insolvent act, so far as I have been able to learn it, has not been by application in w'riting.
*342 In the third place, it is said the judges had no authority to make the order of discharge on the first of August, because they had met on the application of the debtor on the previous day, had then made an order whereby they became as to this matter funeti offieiis, and could not again assemble or act, without a new application from the debtor.
The judges, it appears, met at the request of the debtor, on the 31st of July, received proof of the failure of the weekly allowance, took an assignment from him, and then executed an instrument under their hands and seals reciting what was done and declaring him to be an insolvent debtor, according to the several acts of the state of New Jersey. On the next day, the 1st of August, the three judges again met, and reciting, in another instrument, what had been done on the day previous, and in nearly the same terms, they added thereto an order for the discharge of the debtor, Stiles, from imprisonment, and executed it under their hands and seals bearing the latter date.
The judges did not, at the first meeting, or on the first day, complete the purpose for which they were called together. The first instrument ^simply declared Stiles an insolvent debtor, and gave no order for discharge. If they had attempted to make an order and had made an inefficient or irregular one, they might with some propriety, have .been deemed funeti offieiis, but they had left the order wholly untouched. Hence I see no objection to their convening on the next day, as no legal form or ceremony, was requisite to bring them, together, or to constitute them a competent tribunal, and then completing what they had left unfinished on the antecedent day. Nor was a second application *requisite. The insolvent had applied to them for a discharge according to law, and' this application was available until it was duly answered.
. 4. Another reason for setting aside the order of discharge is that no notice of the application was given to Page the creditor.
*343 The answer to this reason is, that such notice is not required by the statute, nor by any practice under it. A summary relief for the debtor was intended by the legislature, where the creditor failed in making his payment at the stipulated time. It was not wonderful they should hold him to great strictness and vigilance, when they gave him the power of keeping the debtor in confinement upon his own declaration of dissatisfaction and stipulation to make the weekly payments. Nor would it have been reasonable to require notice to a defaulting creditor residing, perhaps, at a great distance, and who must, of course, if notice is to be given, have a reasonable time for attendance, while the debtor, from the want of what he has engaged to supply, is perhaps starving, or subsisting on the bounty of others.
5. In the last place, it is urged that it does not appear that the assignment was filed in the clerk’s office, as directed by the fifth section, prior to the order for discharge, without which it is contended the judges had no authority to make the order.
The making of the assignment is the material act on the part of the debtor; the preservation and filing of it are on the part of the court or the clerk. Where the discharge is actually made in court, there may be a good reason, and no inconvenience, in causing the assignment first to be filed; but when the discharge is to be made by three judges, an extraforensic tribunal, whom the clerk is not bound nor expected to attend, it seems an unnecessarily rigid construction of the act, especially w'here the words do not distinctly require it, to compel the discharge to await the formal act of delivering the assignment to the clerk; and still more so, to render the discharge nugatory if the assignment is not recited to have been so delivered and filed.
This reason is insufficient to affect the validity of the discharge.
Let the order of discharge be affirmed.